**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ANDREA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. |
| | ) | 09-cv-1036 |
| DIRECTV, INC. and THE DIRECTV | ) | |
| GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO STAY**

Pursuant to 9 U.S.C. §§ 3-4, Defendants DIRECTV, Inc. and The DIRECTV

Group, Inc. (collectively, "DIRECTV") hereby move the Court to compel

arbitration of Plaintiff's Complaint and to stay this case pending arbitration.

## I.     INTRODUCTION

Like all DIRECTV customers, Plaintiff Andrea Jones has agreed to be

bound by the terms of DIRECTV's Customer Agreement (hereinafter "Customer

Agreement" or "Agreement"). The Customer Agreement contains a binding and

enforceable arbitration clause which (i) requires Plaintiff to arbitrate any and all

disputes arising from her DIRECTV service or the Customer Agreement; and (ii)

precludes Plaintiff from pursuing such claims through the use of a class action.

Despite her contractual agreement to arbitrate her individual claims against DIRECTV, Plaintiff now brings suit against DIRECTV as the named plaintiff in a putative class action. In 2007, Plaintiff leased two advanced technology satellite receivers from DIRECTV. Plaintiff alleges that DIRECTV improperly billed her for the first of the two receivers, and that DIRECTV improperly computed and charged sales tax under the Customer Agreement. Plaintiff pleads claims for breach of contract, unjust enrichment, accounting, injunctive relief, and declaratory judgment, all of which necessarily and unquestionably arise out of Plaintiff's Customer Agreement, making them subject to mandatory arbitration.

As set forth fully below, DIRECTV's Motion to Compel Arbitration should be granted, and the class action waiver in the Plaintiff's Agreement should be enforced, because:

- The class action waiver provision is not procedurally unconscionable because the waiver is clearly stated in the Customer Agreement, Plaintiff had an opportunity to choose cable and satellite television providers other than DIRECTV and she had an opportunity to cancel her service upon receiving the Customer Agreement (an opportunity she declined);

- The class action waiver provision is not substantively unconscionable. DIRECTV has contractually agreed to pay Plaintiff's arbitration costs beyond a nominal initiation fee, meaning that the cost of arbitration will not be prohibitive. Plaintiff may also recover her attorneys' fees, if successful, pursuant to the Georgia Fair Business Practices Act claim that her counsel has informed DIRECTV she intends to pursue; and

- Plaintiff's claims plainly arise from the underlying Customer Agreement and are therefore arbitrable.

Accordingly, because Plaintiff is party to a valid arbitration agreement containing an enforceable class action waiver, and because Plaintiff's claims are unavoidably arbitrable, this Court should compel arbitration of Plaintiff's claims pursuant to 9 U.S.C. § 4 and stay any further proceedings in this case pursuant to 9 U.S.C. § 3. DIRECTV asks this Court to stay any and all upcoming deadlines (e.g., DIRECTV's deadline to Answer, file initial disclosures, file a joint planning report, etc.) because DIRECTV's Motion is dispositive of this case.

## II.    BACKGROUND

Plaintiff has been a DIRECTV customer since 2002. *See* Declaration of Valerie McCarthy (hereinafter "McCarthy Decl.") attached hereto as Exhibit "A" ¶ 6. Along with her first bill, Plaintiff received a copy of the Customer Agreement. *Id.* The first paragraph of the Customer Agreement that Jones received, written in bold and all capital letters, expressly states that customers may immediately cancel their service should they choose to reject the terms of the Agreement, but that their use of DIRECTV service without rejection constitutes acceptance:

**IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL**

**MEAN THAT YOU ACCEPT THESE TERMS AND, ACCORDINGLY, THEY WILL BE LEGALLY BINDING ON YOU.**

McCarthy Decl. Ex. 1, Preamble (emphasis in original).  Plaintiff never rejected her service, thus evidencing her intent to accept the terms of the Customer Agreement.  Plaintiff subsequently received periodic updates to the Customer Agreement, pursuant to its express terms.  Plaintiff's original Customer Agreement stated that:

> we must reserve the right to change our programming and the terms on which we offer Service…If you elect not to cancel your Service after receiving our notice of a change, your continued receipt of Service from us will constitute your acceptance of the changed terms.

*Id.* at § 4.  By continuing to receive DIRECTV service following updates to the Customer Agreement, Plaintiff evidenced her acceptance of such updates.

DIRECTV from time to time amended its Customer Agreement and sent copies of the amended Agreement to all its customers, including the Plaintiff.  In May 2007, Plaintiff was provided a copy of this contract along with her bill.  McCarthy Decl. ¶ 9.  Section 9 of the April 2007 Customer Agreement, entitled "RESOLVING DISPUTES," contains a broad arbitration clause.  It provides, in relevant part:

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows: . . . [I]f we cannot resolve a Claim informally, any Claim either of us asserts will

be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement . . . **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.** You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state.  Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration.  We also agree to pay the costs of the arbitration proceeding.  Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules.  The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration.

McCarthy Decl. Ex. 3, § 9 (emphasis in original).  The Customer Agreement also contains a class-action waiver provision, which states:

> Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration.  If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, *then this entire Section 9 is unenforceable*.

*Id*. at § 9(c) (emphasis added).  Finally, the Agreement also contains a choice-of-law provision stating that "interpretation and enforcement of this Agreement shall be governed by . . . the laws of the state and local area where Service is provided to you." *Id*. at § 10(b).

On May 8, 2007, and May 21, 2007, Plaintiff obtained two DIRECTV receivers from a Best Buy store in Georgia. McCarthy Decl. ¶ 10. On May 20, 2007, in connection with her receipt of a new receiver, Plaintiff received and executed the a DIRECTV Equipment Lease Addendum (the "Addendum") though her representative.[1] *See* McCarthy Decl. Ex. 4. The Addendum expressly incorporates the April 2007 Customer Agreement, and specifically the Agreement's arbitration provisions:

> ARBITRATION. You and DIRECTV agree that both parties will resolve any dispute arising under this Equipment Lease Addendum, the DIRECTV Customer Agreement or any other addendum thereto, or regarding your DIRECTV programming service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement.

*Id.* at ¶ 8. The Addendum further provides:

> **THIS EQUIPMENT LEASE ADDENDUM CONTAINS THE TERMS AND CONDITIONS FOR THE LEASE BY DIRECTV OF THE DIRECTV EQUIPMENT TO YOU, BUT MUST BE READ TOGETHER WITH THE DIRECTV CUSTOMER AGREEMENT (A COPY OF WHICH IS PROVIDED TO YOU WITH YOUR FIRST BILL AND IS AVAILABLE AT WWW.DIRECTV.COM) FOR ALL OF THE TERMS AND CONDITIONS REGARDING THE PROVISION OF THE SERVICES AND YOUR RIGHT TO USE THE DIRECTV EQUIPMENT.**

*Id.* at ¶ 1 (emphasis in original).

---

[1] The Lease Addendum is provided as the equipment is installed and it is not uncommon for the account holder to designate a representative to receive the installer at the home to complete the installation process.

In sum, by using her DIRECTV service without rejecting the terms of the Agreement, Plaintiff agreed to (i) resolve all her disputes with DIRECTV in binding arbitration; and (ii) forego adjudicating her disputes through class actions. In return, DIRECTV agreed that Plaintiff would pay no more than $125 to initiate the arbitration, and further agreed to pay any and all costs of the arbitration itself.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Federal Arbitration Act Governs the Parties' Dispute; Plaintiff and DIRECTV Are Parties to a Valid and Enforceable Arbitration Clause.

The Federal Arbitration Act ("FAA") preempts state law and governs the enforcement of arbitration clauses contained in contracts that affect interstate commerce.  *See* 9 U.S.C. § 2 (FAA governs written agreements to arbitrate contained in contracts "evidencing a transaction involving commerce"); *see also Allied Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 273 (1995).  The Supreme Court has expansively construed the phrase "involving commerce," interpreting it as extending the FAA's reach to the full limits of Congress's Commerce Clause power.  *See Allied-Bruce,* 513 U.S. at 268 (1995).  Here, Defendant DIRECTV, Inc. is a California corporation, and Defendant The DIRECTV Group, Inc. is a Delaware corporation.  McCarthy Decl. ¶ 2.  There is no question that a contract between a Georgia customer and two out of state corporations involves interstate

commerce and thus requires the application of the FAA. The Customer Agreement also selects the FAA as governing law. McCarthy Decl. Ex. 3, § 10(b).

When Congress enacted the FAA, it established a strong policy favoring arbitration of disputes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (various provisions of the FAA "manifest a liberal federal policy favoring arbitration agreements") (internal quotations omitted). The United States Supreme Court has repeatedly recognized this policy in favor of enforcing arbitration agreements. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (noting the pro-arbitration purposes of the FAA); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89-90 (2000) (enforcing agreement to arbitrate and holding that Congress intended the FAA "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts'"). To further this policy, the Supreme Court has instructed courts to interpret arbitration clauses broadly. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Kelly v. Merrill Lynch, Pierce, Fenner, & Smith Inc.*, 985 F.2d 1067, 1069 (11th Cir. 1993). Consequently, courts are obligated to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). Indeed, so strong is the presumption that arbitration clauses are enforceable that courts must resolve

"any doubts concerning the scope of arbitrable issues should . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).

Because the FAA's provisions governing compelling arbitration are compulsory, this Court must grant DIRECTV's Motion to Compel Arbitration, stay further proceedings in this case, and order Plaintiff to submit her claims to arbitration if the Court finds that: (i) there exists a valid and enforceable written agreement to arbitrate; and (ii) Plaintiff's claims fall within the scope of that agreement. *See* 9 U.S.C. §§ 3, 4. For the reasons set forth below, both of these requirements are satisfied here, and DIRECTV's Motion should be granted.

**B.      Plaintiff and DIRECTV Are Parties to Valid and Enforceable Arbitration Clause.**

Plaintiff must individually arbitrate, rather than litigate, her claims against DIRECTV because she agreed to abide by the terms of the Customer Agreement, which in turn contains a broad arbitration clause. *See* McCarthy Decl. ¶ 7-9. Plaintiff cannot avoid her unambiguous contractual obligations by arguing that DIRECTV's arbitration clause – or its class action waiver provision – is somehow unconscionable and therefore unenforceable. In Georgia,[2] "the basic test for

---

[2]      While the validity of an arbitration agreement is generally governed by the FAA, the FAA requires courts to apply state-law contract principles to determine

determining unconscionability is 'whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" *NEC Techs. Inc. v. Nelson,* 267 Ga. 390, 391, 478 S.E.2d 769, 771 (1996). A court may not find an arbitration clause unconscionable unless it is <u>both</u> procedurally and substantively unconscionable. *Id*. at 394 n.6. As set forth below, DIRECTV's arbitration clause is neither procedurally nor substantively unconscionable, and thus this Court should compel arbitration of Plaintiff's dispute.

### 1. DIRECTV's Arbitration Clause is Not Procedurally Unconscionable.

To determine procedural consciability, courts are to consider the conspicuousness of and comprehensibility of the contract language, and whether the consumer had a meaningful choice about whether to enter into the contract at issue. *See NEC Techs. Inc. v. Nelson,* 267 Ga. 390, 392 (1996). DIRECTV's

---

whether an agreement is unconscionable. *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir. 2005); *Lambert v. Austin Ind*., 544 F.3d 1192 (11th Cir. 2008). Here, the parties expressly agreed that the law of the state in which service was provided would govern their disputes. *See* McCarthy Decl. ¶ Ex. 3, § 10(b). Accordingly, Georgia law governs the issue of whether DIRECTV's arbitration clause is unconscionable.

arbitration agreement and accompanying class-action waiver is not procedurally

unconscionable for three reasons, discussed below.

First, it is beyond dispute that Jones could have obtained satellite or cable

television services from a company other than DIRECTV, and thus Jones had a

meaningful choice of service providers.  The Georgia Supreme Court has held

that the presence of meaningful choice is a factor in determining whether a

contract is procedurally unconscionable.  *NEC Techs. Inc. v. Nelson*, 267 Ga.

390, 393 (1996) (holding that "presence or absence of a meaningful choice" is a

relevant factor in procedural unconscionability analysis).

Second, the arbitration provision and class action waiver are clearly

written and prominently displayed in the Agreement – indeed, the jury trial

waiver appears in bold, capital letters. McCarthy Decl. Ex. 3, § 9(b)

("**ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A**

**JURY TRIAL**.") (emphasis in original).  The Lease Addendum also expressly

states that any disputes that arise out of it will be resolved "through binding

arbitration as fully set forth in the DIRECTV Customer Agreement."  McCarthy

Decl. Ex. 4, ¶ 8.  Courts have found that similar arbitration clauses are clear,

prominent, and therefore not procedurally unconscionable.  *See Caley v.*

*Gulfstream Aerospace Corp*., 333 F. Supp. 2d 1367, 1377 (N.D. Ga. 2004) (jury

trial waiver and arbitration provision prominent and clearly written and therefore enforceable); *Lomax v. Woodmen of World Life Ins. Society*, 228 F. Supp. 2d 1360 (N.D. Ga. 2002) (arbitration class action waiver not procedurally unconscionable even though not in bold lettering).

Finally, the Customer Agreement contains a clear opt-out provision – again, written in bold, capital letters – that expressly allows customers to <u>reject</u> the terms of the Agreement with no adverse consequences when those terms are first received. ("**IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.**"). McCarthy Decl. Ex. 1; Preamble, McCarthy Decl. Ex. 3, Preamble. Plaintiff did not opt-out when DIRECTV updated the Customer Agreement to include the class action waiver in 2004.[3] McCarthy Decl. ¶ 8. Thus, by maintaining her service when the Agreement was updated to include the class action waiver, Plaintiff agreed to this change. Accordingly, not only did Plaintiff have a choice of cable and satellite service providers from which to choose, but she also had a choice as to whether to accept the arbitration provision and class action waiver. Despite all this, Plaintiff chose to use DIRECTV service, and she chose not to reject the terms of the Customer Agreement. The mere fact that Plaintiff

---

[3]     At all times relevant to Plaintiff, the Customer Agreement contained an arbitration clause. McCarthy Decl. ¶ 7.

may be unsatisfied by her choice does not render the class action waiver unconscionable.[4]

In sum, because the arbitration agreement and class action waiver are not procedurally unconscionable, the arbitration agreement should be upheld. *NEC Techs.,* 267 Ga. at 394 n.6 (both procedural and substantive unconscionability necessary to render contract unenforceable).

### 2. DIRECTV's Arbitration Clause is Not Substantively Unconscionable.

#### a. Arbitration Waivers Are Generally Enforceable.

The parties' arbitration agreement and class action waiver are not substantively unconscionable. The Eleventh Circuit has repeatedly enforced arbitration clauses that contain class action waivers. *See Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1378 (11th Cir. 2005) (holding that an arbitration agreement was not procedurally or substantively unconscionable even though it precluded class actions); *Jenkins,* 400 F.3d at 877 (holding that arbitration agreements precluding class action relief are generally valid and enforceable); *Randolph v.*

---

[4] It is well-established that under Georgia law, the mere fact that a contract is adhesive is not enough to render the contract procedurally unconscionable. *See Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1378 (11th Cir. 2005); *Saturna v. Bickley Constr. Co.,* 252 Ga. App. 140, 141 (2001) (noting that lack of sophistication or economic disadvantage of party opposing arbitration does not render the agreement to arbitrate unenforceable).

*Green Tree Fin. Corp.*, 244 F.3d 814, 816 (11th Cir. 2001). Indeed, the Eleventh

Circuit has expressly recognized that:

> [T]he fact that certain litigation devices [such as class actions] may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition . . . characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims.

*Caley*, 428 F.3d at 1378 (internal quotations and citations omitted). In other

words, because the whole purpose of arbitration is to offer expedited resolution of

low-value claims, an agreement to forego class-wide adjudication of a claim in

arbitration is neither remarkable nor inconsistent with the goals of the Federal

Arbitration Act.

> **b.      DIRECTV's Arbitration Waiver is Enforceable Because Arbitration Would Not Deprive Plaintiff of Her Ability to Remedy Her Claim Against DIRECTV.**

The Eleventh Circuit has created one exception to the rule that class action

waivers are generally enforceable, however. In the recent case of *Dale v.*

*Comcast*, 498 F.3d 1216 (11th Cir. 2007), the court found that a class action

waiver in an arbitration clause was unconscionable where the plaintiffs were

pursuing low-value claims that did not entitle them to an award of attorneys'

fees. *Id*. at 122-242. The court concluded that absent class-wide

adjudication, it was unlikely that any attorney would ever represent the named

plaintiffs, and thus their claims would go unremedied:

> Without the benefit of a class action mechanism, the subscribers would effectively be precluded from suing Comcast for a violation of 47 U.S.C. § 542. The cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great. Additionally, because the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, and because state law allows fees and costs to be awarded only where bad faith is shown, it will be difficult for a single subscriber to obtain representation.

*Id*. at 1224.

The only court to have ruled on this issue following *Dale* has concluded that a class action waiver is nonetheless enforceable where plaintiff asserts a claim under a statute containing "an automatic fee-shifting provision that would allow the plaintiffs to recover attorney's fees if they prevailed." *Honig v. Comcast*, 537 F. Supp. 2d 1277, 1287 (N.D. Ga. 2008). In *Honig*, the court found that Comcast's class action waiver provision was enforceable because: (i) the plaintiff was asserting a claim under the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq*., which guarantees the prevailing party attorney's fees; and (ii) because the contract at issue contained a provision that would have allowed the plaintiff to opt out of the arbitration clause without adverse consequences. *Id*. at 1287-89. Thus the court found that there was little danger that the plaintiff's claims would go unremedied.

Here, as in *Honig*, there is no danger that Plaintiff's claims would go unremedied by virtue of the class action waiver, and thus the provision is not substantively unconscionable. First, as stated above, Plaintiff had the opportunity to

opt out of the Customer Agreement and its arbitration waiver provision without adverse consequences. Page 1 of the Agreement states in bold, capital letters that a customer is free to reject the terms of the Agreement and cancel her service. McCarthy Decl. Ex. 1, Preamble. As in *Honig*, Plaintiff had the chance to opt out of the contract that she is now seeking to avoid, and her failure to do so obviates any claim of unconscionability. *See Honig*, 537 F. Supp. 2d at 1289 (noting that ability to opt out of an agreement "dilutes [the plaintiff's] unconscionability argument").

Second, DIRECTV's arbitration clause expressly provides that DIRECTV will pay all costs associated with the arbitration beyond an initial filing fee of no more than $125 or the cost of bringing an equivalent claim in court. McCarthy Decl. Ex. 3, § 9(b). Thus even if Plaintiff were forced to arbitrate her dispute individually, her costs would be no different than those associated with bringing suit in Small Claims Court. *See, e.g.*, http://www.georgiacourts.org/courts/ fulton/fees.html (fees associated with suit in Fulton County Magistrate Court Small Claims Division are $49.50 to file suit and $50 in Marshall's fees to serve the two DIRECTV Defendants). Because DIRECTV has agreed to bear the costs, the expense of arbitrating Plaintiff's claims individually would not be cost-prohibitive, an additional factor counseling in favor of finding the class-action waiver enforceable.

Finally, Plaintiff has asserted a claim against DIRECTV that would entitle her to attorneys' fees should she prevail. Although Plaintiff's Complaint only lists claims for breach of contract, unjust enrichment, accounting, injunctive relief, and declaratory relief (none of which automatically provide for the award of attorneys' fees should Plaintiff prevail), Plaintiff has stated her intent to pursue a Georgia Fair Business Practices Act ("GFBPA") claim. On November 26, 2008, Plaintiff's counsel wrote to DIRECTV pursuant to the pre-suit notice provision of the GFBPA, O.C.G.A. § 10-1-399(b). *See* Declaration of Michelle Stratton (hereinafter "Stratton Decl.") attached hereto as Exhibit "B" ¶ 2. In this letter, Plaintiff's counsel alleged that DIRECTV "improperly and/or deceptively imposes improper taxes on its customers," the same allegations that Plaintiff now brings in this lawsuit. Plaintiff's counsel alleged that DIRECTV's conduct violated both the GFBPA and the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, and that Plaintiff intended to pursue these claims unless DIRECTV settled the dispute (which it did not). Stratton Decl. Ex. 1.

Accordingly, Plaintiff has unequivocally asserted that (i) the same conduct on which Plaintiff has based her in the present litigation also constitutes a violation of the GFBPA; and (ii) she intends to pursue a GFBPA claim to

remedy that violation. This is not a case where a party simply does not have any available statutory claim that would provide attorneys' fees. To the contrary, as Plaintiff's counsel's letter makes clear, Plaintiff would have a GFBPA claim available to her should this Court compel arbitration. This Court has explicitly held that a class action waiver provision is not unconscionable where a GFBPA claim is available. *See Honig*, 537 F. Supp. 2d at 1289. Plaintiff cannot render the class action waiver provision in the Customer Agreement substantively unconscionable by refusing to include in her Complaint a GFBPA claim that it is clear she believes is colorable. The mere fact that Plaintiff has not formally included this claim in her Complaint does nothing to change the availability of Plaintiff's GFBPA claim in arbitration.

### c. Plaintiff Cannot Render The Waiver Unconscionable By Renouncing a Claim She Previously Asserted.

Nor is Plaintiff's position improved if she asserts that she has irrevocably abandoned her GFBPA claim. As an initial matter, it is well-established that under the prohibition against claim splitting, Plaintiff must assert all her claims against DIRECTV that concern the subject matter of this lawsuit. *See Barnum v. Coastal Health Services, Inc.*, 288 Ga. App. 209 (Ga.

Ct. App. 2008) ("Georgia law prohibits the splitting of claims such that in suing a particular defendant, 'a plaintiff must bring every claim for relief he has concerning the same subject matter in one lawsuit.'").  Because Plaintiff – as well as all putative class members – must bring all their claims against DIRECTV in this lawsuit, any abandonment of Plaintiff's substantial GFBPA claim would necessarily impair the rights of absent class members, and would preclude Plaintiff's pursuit of this claim on anything other than an individual basis.  *See Krueger v. Wyeth, Inc.*, 2008 WL 481956 *3 (S.D. Cal., Feb. 19, 2008) (plaintiff's failure to assert all claims against defendant, thereby waiving recovery of potentially substantial damages for members of the putative class, constitutes claim splitting and "constitutes a compelling reason to deny class certification"); *Drimmer v. WD-40 Co.*, 2007 U.S. Dist. LEXIS 62582 (S.D. Cal., Aug. 24, 2007) (holding that "[a] class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595 (S.D.N.Y. 1982) (denying class certification where plaintiffs abandoned claims "in an effort to improve the possibility of demonstrating commonality");  *Pearl v. Allied Corp.*, 102 F.R.D. 921, 924 (E.D. Pa. 1984) ("class members whose claims would be

abandoned by the plaintiffs may find themselves precluded by the doctrine of res judicata from asserting those claims in subsequent actions.").

Accordingly, because (i) Plaintiff purports to have a GFBPA claim that can be pursued in arbitration; and (ii) Plaintiff would impair the rights of absent class members if she is allowed to abandon her GFBPA claim while pursuing a class action, enforcement of the class-action waiver would not be unconscionable. Indeed, the availability of attorneys' fees under Plaintiff's GFBPA claim, combined with the minimal expense of arbitration to be borne by Plaintiff, makes this the precise type of case for which the Eleventh Circuit has encouraged arbitration on an individualized basis. *See Caley*, 428 F.3d at 1378 ("[T]he fact that certain litigation devices [such as class actions] may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition . . . characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims.") (internal quotations and citations omitted). In fact, in *Honig*, the Northern District of Georgia granted defendant's motion to compel arbitration of a GFBPA claim where the plaintiff claimed that she was charged $16.40 without authorization. *See Honig*, 537 F. Supp. 2d at 1290.

### d. A Finding That The Waiver is Unenforceable Precludes Compelling Arbitration of this Dispute.

If, however, the Court concludes that the class-action waiver provision is somehow unconscionable (and it is not), the parties have agreed that the <u>entire arbitration agreement is unenforceable</u>. Section 9(d) of the Agreement provides, in relevant part, "if, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire [arbitration agreement] is unenforceable." McCarthy Decl. Ex. 3, § 9(d). Accordingly, should the Court conclude that the class action waiver is unenforceable, then the parties have agreed not to arbitrate any disputes between them, and DIRECTV withdraws its Motion to Compel Arbitration.

### C. Plaintiff's Claims are Plainly Arbitrable.

As discussed above, the Supreme Court has instructed lower courts that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24-25; *see also Becker v. Davis,* 491 F.3d 1292, 1305 (11th Cir. 2007) (observing that "federal policy requires [courts] to construe arbitration clauses generously, resolving all doubts in favor of arbitration").

The arbitration clause in the Customer Agreement is unmistakably broad, extending to "<u>any</u> legal or equitable claim relating to this Agreement, any

addendum, or your Service." McCarthy Decl. Ex. 3, § 9 (emphasis added).

When parties use such expansive phrasing, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986). The presumption is in favor of arbitration because "parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Sanders v. Kaye Enters., LLC,* No. 07-CV-123, 2008 WL 275746, at *4 (M.D. Ga. Jan. 30, 2008).

Here, there can be no question that all of Plaintiff's claims relate to her Customer Agreement and are therefore arbitrable. Plaintiff asserts claims for breach of contract, unjust enrichment, accounting, injunctive relief, and declaratory relief. The factual predicate for every one of these claims is Plaintiff's assertion that under the terms of her Customer Agreement, DIRECTV was (i) contractually barred from charging her lease fees on secondary receivers; and (ii) contractually obligated to only charger her appropriate taxes. Compl. ¶¶ 33, 36, 38, 39. It is the breach of these alleged contractual provisions that give rise to each and every one of Plaintiff's claims. It is hard to imagine a more arbitrable claim than one that relates to breach of the underlying agreement itself. Absent the existence of the Customer Agreement, Plaintiff simply could not pursue this lawsuit, and thus her claims are necessarily arbitrable.

**D.    The Court Should Stay All Claims Against The DIRECTV Group, Inc**.

It is well established that district courts have broad authority to stay a case pending resolution of a related matter.  *See Clinton v. Jones,* 520 U.S. 681 (1997) (discussing district court's "broad discretion to stay proceedings as an incident to its power to control its own docket").  The United States Supreme Court has expressly found that lower courts have the authority to stay litigation involving a non-arbitrating party pending arbitration between to two arbitrating parties.  *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp*., 460 U.S. 1, 20 n.23 (1983).  Here, The DIRECTV Group, Inc. ("Group") is not a party to Plaintiff's arbitration agreement with DIRECTV, Inc.  Nonetheless, a stay of Plaintiff's claims against Group – the ultimate parent company of DIRECTV, Inc. – is both proper and logical.  Plaintiff has pled no unique claims against Group, and instead simply defines all defendants as "DirecTV."  Because Plaintiff's claims arise out of her relationship with contractual relationship DIRECTV, Inc., are based on her lease of equipment from DIRECTV, Inc., and billing of DIRECTV, Inc.'s satellite television services, the arbitration will completely resolve any derivative claims against Group.  There is simply no need to create parallel proceedings – with the inevitable risk of differing results – where Plaintiff's arbitration against DIRECTV, Inc. will invariably determine whether Plaintiff has

a valid claim against The DIRECTV Group, Inc. Accordingly, the Court should

exercise its discretion and stay Plaintiff's claims against The DIRECTV Group,

Inc. pending Plaintiff's arbitration against DIRECTV, Inc.

**E.      It Would Be a Waste of Resources to Allow Discovery in this Case
          Because Plaintiff's Claims are Clearly Arbitrable.**

DIRECTV has made clear that the arbitration clause and the class action

waiver provision between Plaintiff and DIRECTV should be enforced, and this case

should be referred to binding arbitration. Because Plaintiff is party to a valid

arbitration agreement containing an enforceable class action waiver, DIRECTV's

Motion is likely to be granted, and Plaintiff's claims will be referred to binding

arbitration. It would be a waste of judicial and party resources to allow costly

discovery in a matter that will be sent to binding arbitration. For these reasons,

DIRECTV respectfully asks the Court to stay all further deadlines pending its ruling

on DIRECTV's Motion to Compel Arbitration. Although the Customer Agreement

is between Plaintiff and DIRECTV, Inc. but not The DIRECTV Group, Inc., the

claims raised against The DIRECTV Group, Inc. are identical to the claims against

DIRECTV, Inc. which arise out of the Customer Agreement, and they should also be

stayed based upon the discretion of this Court.

## IV. CONCLUSION

Because DIRECTV has shown the Court that it has a valid arbitration agreement containing an enforceable class action waiver, and because Plaintiff's claims are unavoidably arbitrable, this Court should compel arbitration of Plaintiff's claims pursuant to 9 U.S.C. § 4 and stay any further proceedings in this case pursuant to 9 U.S.C. § 3.

Respectfully submitted, this 24th day of April, 2009.

/s/ Matthew D. Richardson
_____
Matthew D. Richardson
Georgia Bar No. 604081
Matthew D. Justus
Georgia Bar No. 354555
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone: (404) 881-7000
Facsimile:   (404) 881-7777

OF COUNSEL:
ANDREW E. PARIS
ALSTON & BIRD LLP
333 South Hope Street
16th Floor
Los Angeles, California  90071
Telephone:  (213) 576-1000
Facsimile:   (213) 576-1100

Attorneys for Defendants
DIRECTV, Inc. and THE DIRECTV GROUP, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day a copy of **DEFENDANT'S**

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

**ARBITRATION** has been served upon the following counsel of record by United

States mail, postage prepaid and addressed as follows:

> E. Adam Webb
> WEBB, KLASE & LEMOND, L.L.C.
> 1900 The Exchange, S.E.
> Suite 480
> Atlanta, Georgia 30339

This 24th day of April, 2009

/s/ Matthew D. Richardson

_____
Matthew D. Richardson